UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| JEWELL THOMAS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 2:22-CV-00129 |
| | § | |
| JERRY SANCHEZ, *et al.*, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND RECOMMENDATION
TO DISMISS CASE**

Plaintiff Jewell Thomas, appearing *pro se* and *in forma pauperis*, has filed this prisoner civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff asserts claims against Defendants under the Eighth Amendment, the Americans with Disabilities Act (ADA), 42 U.S.C. § 12112(b)(5)(A), and the Rehabilitation Act (RA), 29 U.S.C. § 794. Plaintiff's case is subject to screening pursuant to the Prison Litigation Reform Act. *See* 42 U.S.C. § 1997e(c); 28 U.S.C. § 1915A.

For the reasons set forth below, the undersigned respectfully recommends that: (1) Plaintiff's § 1983 claims for money damages against **Dr. Isaac Kwarteng, Jerry Sanchez, Leah Rea, and Bryan Collier** in their official capacities be **DISMISSED without prejudice** as barred by the Eleventh Amendment; and (2) Plaintiff's Eighth Amendment and ADA/RA claims against Defendants in their respective individual and official capacities be **DISMISSED with prejudice** as frivolous and/or for failure to state a claim

for relief pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1). The undersigned recommends further that the dismissal of this case counts as a "strike" for purposes of 28 U.S.C. § 1915(g).[1]

## I.  JURISDICTION

The Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331. This case has been referred to the undersigned magistrate judge for case management and making recommendations on dispositive motions pursuant to 28 U.S.C. § 636.

## II.  PROCEDURAL BACKGROUND

Plaintiff is a prisoner in the Texas Department of Criminal Justice, Criminal Institutions Division (TDCJ-CID) and is housed at the McConnell Unit in Beeville, Texas. Plaintiff's allegations in this case arise in connection with his current housing assignment.

In this action, Plaintiff sues the following defendants: (1) Senior Warden Jerry Sanchez (Sanchez); (2) Dr. Isaac Kwarteng (Dr. Kwarteng); (3) TDCJ Executive Director Bryan Collier (Collier); and (4) Leah Rea (Rea), a mental health clinician.[2] With respect to his Eighth Amendment, ADA, and RA claims, Plaintiff seeks monetary relief in his Original Complaint.

---

[1] Plaintiff is **WARNED** that if he accumulates three strikes, he will not be allowed to proceed *in forma pauperis* in any civil action or appeal filed while he is incarcerated or detained in any facility unless he is under imminent danger of serious injury. *See* 28 U.S.C. § 1915(g).

[2] It is unclear from the record whether Rea is a doctor or other medical provider.

On July 6, 2022, the undersigned conducted a *Spears*[3] hearing where Plaintiff was given an opportunity to explain his claims. The following representations were made either in Plaintiff's Original Complaint (D.E. 1) or at the *Spears* hearing. At the time of the *Spears* hearing, Plaintiff turned 50 years old. He is 6'0" tall and weighs 213 pounds. (D.E. 16, p. 3). Plaintiff arrived at the McConnell Unit on October 1, 2021. (*Id.*).

Before arriving at the McConnell Unit, Plaintiff was diagnosed with having post-traumatic stress (PTSD) disorder, manic depressive disorder with psychotic features, and schizophrenia. (*Id.* at 4-5). Plaintiff states that these disorders are qualified disabilities which limit his ability to learn, read, concentrate, sleep, and think. (D.E. 5, p. 2). When his disabilities are active, Plaintiff experiences anxiety, racing thoughts, stress, hallucinations, flashbacks, and shortness of breath with lethargy. (D.E. 16, p. 6). Plaintiff also hears voices in his head. (*Id.*). No medical, work, or housing restrictions, however, were placed on Plaintiff as a result of his psychological disorders. (*Id.* at 7).

Plaintiff has been prescribed "different types of medication" for his psychological disorders which have caused him adverse side effects. (*Id.*). Plaintiff has signed "a refusal of treatment from declining all oral medication because of adverse side effects." (*Id.*). Plaintiff instead seeks psychological counseling and group therapy for his disorders. (*Id.* at 7-8). While housed at the McConnell Unit, Plaintiff has received no treatment in the form of either medications of counseling. (*Id.* at 8).

---

[3] *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985).

Plaintiff testified that sick call requests regarding his mental health issues went to the mental health department and not to the clinical department. (*Id.* at 26-27). Despite his mental health complaints going to a different department, Plaintiff verbally discussed his mental health concerns with Dr. Kwarteng. (*Id.* at 27). Dr. Kwarteng provided Plaintiff with zero treatment and did not make any referrals for Plaintiff to see any mental health providers or schedule Plaintiff for counseling. (*Id.* at 8-9).

Plaintiff believes that Dr. Kwarteng, as the unit's medical director, has adopted policies in the medical department that have caused him and his staff to act with deliberate indifference to his serious mental health needs. (*Id.* at 9). Plaintiff cites Dr. Kwarteng's failure to transfer Plaintiff to another facility that can more appropriately address Plaintiff's mental health needs. (*Id.* at 12). Plaintiff further complains about Dr. Kwarteng's policy of not allowing Plaintiff to get psychological counseling even though that service is available within the TDCJ system. (*Id.* at 13).

With regard to his ADA and RA claims, Plaintiff testified at the *Spears* hearing that:

[Dr. Kwarteng] is aware that I'm unable to access the services, the programs and the activities that are available within the TDCJ system. I'm unable to access such programs and services because of my disabilities.

I'm unable to, for example, go to the cafeteria without hearing voices, without having anxiety … without hallucinating, without having raced [sic] thoughts, I'm unable to go to medical. I cannot concentrate. I cannot think. I cannot read. I cannot do these things without accessing the benefits of the programs that are available within the TDCJ system. [Dr.] Kwarteng is aware that I cannot access these such services, activities, and programs.

(*Id.* at 9-10).  Plaintiff. therefore, seeks reasonable accommodations in the form of psychological counseling, psychological therapy, and group treatment so that he can access TDCJ programs and services.  (*Id.* at 14-15).  Plaintiff sues Dr. Kwarteng in his individual and official capacities.  (*Id.* at 15).

Plaintiff stated that, in early December of 2021, he spoke with Sanchez in the unit's chow hall with regard to Plaintiff's need for mental health treatment.  (*Id.* at 16).  Sanchez responded by referring Plaintiff to Rea, a mental health clinician.  (*Id.* at 16-17).  Plaintiff claims that Sanchez is responsible for every inmate on the unit and should, therefore, be accountable for Plaintiff's failure to obtain proper mental health treatment.  (*Id.* at 18).  Plaintiff alleges that Sanchez took no action to provide Plaintiff with reasonable accommodations for his psychological disorders.  (*Id.* at 17).  Sanchez further failed to have policies in place outlining the steps for medical personnel to provide inmates with mental health needs or accommodations for such needs.  (*Id.* at 18-19).  Plaintiff sues Sanchez in his individual and official capacities.  (*Id.* at 19).

According to Plaintiff, Rea is an employee of the University of Texas Medical Branch (UTMB) assigned to work at the McConnell Unit.  (*Id.* at 19-20).  Plaintiff met with Rea on December 28, 2021.  (*Id.* at 20).  Rea was upset with Plaintiff for signing a refusal of treatment form declining oral medications due to adverse side effects.  (*Id.* at 20).  After Plaintiff described to her the symptoms he was experiencing, Rea insisted that Plaintiff needed to "get on meds."  (*Id.* at 21).  Although Rea did not mention any particular

medications, Plaintiff stated that "they" commonly prescribe Cymbalta and Effexor. (*Id.*). Plaintiff's meeting with Rea lasted less than five minutes. (D.E. 22).

On or about January 12, 2022, Plaintiff met with a medical professional having the first name "Cline." (*Id.*). Cline visited Plaintiff in his cell, bringing him an eight-page brochure about depression. (*Id.* at 23). Plaintiff indicated that he has had additional interactions with Cline. (*Id.*). According to Plaintiff, neither Rea or Cline would help Plaintiff until he decided to get on medications. (*Id.* at 23-24).

In February 2022, Warden Nunez referred Plaintiff to see Rea. (*Id.* at 25). Plaintiff met with Rea sometime between February 5 and 8, 2022. (*Id.*). After listening to Plaintiff describe his symptoms, Rea again recommended that Plaintiff take medications. (*Id.* at 25-26). Plaintiff met with Cline a total of four or five times in 2022. (*Id.* at 26). Cline told Plaintiff on each occasion that Plaintiff needed "to be on meds" and that "[w]e can't help you if you're not on meds." (*Id.*).

Plaintiff claims that Rea: (1) acted with deliberate indifference to his serious medial needs by ignoring his complaints and failing to treat him; and (2) violated his ADA and RA rights by not giving him "the appropriate medical treatment that [would] allow [him] to access the services and the activities that are available to [him] within the TDCJ system." (*Id.* at 28). Plaintiff sues Rea in her individual and official capacities. (*Id.* at 28-29).

In his Original Complaint, Plaintiff named TDCJ Executive Director Collier as a defendant. (D.E. 1, p. 1). In his amended complaint, however, Plaintiff names TDCJ as a

defendant and not Collier. (D.E. 5, p. 10). Plaintiff clarified at the *Spears* hearing that, with respect to his ADA and RA claims, he sues both TDCJ and Collier in his official capacity based on their discriminatory policies. (D.E. 16, pp. 29-32). Plaintiff further clarified that, in addition to monetary relief, he seeks injunctive relief in the form of being transferred to another facility to receive proper counseling. (*Id.* at 32-34).

## III. LEGAL STANDARD

When a prisoner seeks to proceed *in forma pauperis* the Court shall evaluate the complaint and dismiss it without service of process if the Court finds the complaint frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A. *See* 28 U.S.C. § 1915(e)(2)(B) (providing that a court shall review an *in forma pauperis* complaint as soon as practicable and dismiss it if it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from an immune defendant). A claim is frivolous if it has no arguable basis in law or fact. *Neitzke v. Williams,* 490 U.S. 319 (1989). A claim has no arguable basis in law if it is based on an indisputably meritless legal theory, "such as if the complaint alleges the violation of a legal interest which clearly does not exist." *Davis v. Scott,* 157 F.3d 1003, 1005 (5th Cir. 1998). A claim has no arguable basis in fact if "after providing the plaintiff the opportunity to present additional facts when necessary, the facts alleged are clearly baseless." *Talib v. Gilley,* 138 F.3d 211, 213 (5th Cir. 1998).

"In analyzing the complaint, [the Court] will accept all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Jones v. Greninger,* 188 F.3d 322, 324 (5th Cir. 1999). "The issue is not whether the plaintiff will ultimately prevail, but whether he is entitled to offer evidence to support his claim. Thus, the Court should not dismiss the claim unless the plaintiff would not be entitled to relief under any set of facts or any possible theory that he could prove consistent with the allegations in the complaint." *Id.* (citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plaintiff must allege sufficient facts in support of its legal conclusions that give rise to a reasonable inference that Defendant is liable. *Id.*; *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007). The factual allegations must raise Plaintiff's claim for relief above the level of mere speculation. *Twombly*, 550 U.S. at 555. As long as the complaint, taken as a whole, gives rise to a plausible inference of actionable conduct, Plaintiff's claim should not be dismissed. *Id.*

## IV.    DISCUSSION

### A.    Plaintiff's § 1983 Claims

Section 1983 provides a vehicle for redressing the violation of federal law by those acting under color of state law. *Nelson v. Campbell*, 541 U.S. 637, 643 (2004). To prevail on a § 1983 claim, the plaintiff must prove that a person acting under the color of state law deprived him of a right secured by the Constitution or laws of the United States. 42 U.S.C. § 1983; *West v. Atkins,* 487 U.S. 42, 48 (1988). A defendant acts under color of state law

if he misuses or abuses official power and if there is a nexus between the victim, the improper conduct, and the defendant's performance of official duties. *Townsend v. Moya,* 291 F.3d 859, 861 (5th Cir. 2002).

### (1) Eleventh amendment immunity and Official Capacity

A suit against a state officer in his or her official capacity is effectively a suit against that state official's office. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). The Eleventh Amendment, however, bars claims for money damages against a state or state agency. *See Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 54 (1996); *Aguilar v. Texas Dep't of Criminal Justice,* 160 F.3d 1052, 1054 (5th Cir. 1998). As such, an action for monetary damages against a state official in his or her official capacity is one against the state itself, and is barred by the Eleventh Amendment. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985). The Fifth Circuit has extended the Eleventh Amendment immunity specifically to TDCJ officers and officials acting in their official capacities. *See Oliver v. Scott*, 276 F.3d 736, 742 (5th Cir. 2002) (Eleventh Amendment bars prisoner's suit for money damages against prison officials in their official capacities).

To the extent that Plaintiff sues Dr. Kwarteng, Rea, and Sanchez in their official capacities for monetary damages, those § 1983 claims are barred by the Eleventh Amendment. Thus, it is respectfully recommended that Plaintiff's claims for money damages against these individual defendants in their official capacities be dismissed as barred by the Eleventh Amendment.

## (2)   Eighth Amendment - Deliberate Indifference

The Eighth Amendment prohibits cruel and unusual punishment.  U.S. Const. amend. VIII.  An Eighth Amendment violation occurs when a prison official acts with deliberate indifference to an inmate's health and safety.  *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

Prison officials are liable for failure to provide medical treatment if they are deliberately indifferent to a prisoner's serious medical needs.  *Estelle v. Gamble*, 429 U.S. 97 (1976).  Deliberate indifference may be exhibited by prison doctors in their response to prisoners' needs, but it may also be shown when prison officials have denied an inmate prescribed treatment or have denied him access to medical personnel capable of evaluating the need for treatment.  *Id.* at 104-05.  A prison official acts with deliberate indifference if he or she knows that an inmate faces a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it.  *Farmer*, 511 U.S. 825, 847 (1994).  The official must both be aware of facts from which an inference of substantial risk of serious harm can be drawn and also draw the inference.  *Easter v. Powell*, 467 F.3d 459, 463 (5th Cir. 2006).  A prison official's knowledge of substantial risk may be inferred if the risk was obvious.  *Id.*

"Deliberate indifference is an extremely high standard to meet."  *Domino v. Texas Dept. of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001).  In the context of medical treatment, the prisoner must show "that prison officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that

would clearly evince a wanton disregard for any serious medical needs." *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) (internal quotation marks and citation omitted). Delay in treatment may be actionable under § 1983 only if there has been deliberate indifference and the delay results in substantial harm. *Stewart v. Murphy,* 174 F.3d 530, 537 (5th Cir.1999); *Mendoza v. Lynaugh,* 989 F.2d 191, 195 (5th Cir. 1993).

Although inadequate medical treatment may rise to the level of a constitutional violation, "unsuccessful medical treatment and acts of negligence or medical malpractice do not constitute deliberate indifference, nor does a prisoner's disagreement with [his] medical treatment, absent exceptional circumstances." *Sama v. Hannigan*, 669 F.3d 585, 590 (5th Cir. 2012). Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind. *McCormick v. Stalder*, 105 F.3d 1059, 1061 (5th Cir. 1997) (citations omitted).

"Personal involvement is an essential element of a civil rights cause of action." *Thompson v. Steele,* 709 F.2d 381, 382 (5th Cir. 1983). It is well established that a prison supervisor cannot be held liable for the misconduct of his or her subordinates. *See Thompkins v. Belt*, 828 F.2d 298, 303 (5th Cir. 1987). There is no vicarious or *respondeat superior* liability of supervisors under section 1983. *Id.* at 303-04. *See also Carnaby v. City of Houston,* 636 F.3d 183, 189 (5th Cir. 2011) (the acts of subordinates do not trigger individual § 1983 liability for supervisory officials).

"Supervisory officials may be held liable only if: (1) they affirmatively participate in acts that cause constitutional deprivation; or (2) implement unconstitutional policies that

causally result in plaintiff's injuries." *Mouille v. City of Live Oak, Tex.*, 977 F.2d 924, 929 (5th Cir. 1992). "Mere knowledge and acquiescence on a supervisor's part is insufficient to create supervisory liability under § 1983." *Doe v. Bailey*, No. H-14-2985, 2015 WL 5737666, at *9 (S.D. Tex. Sep. 30, 2015) (citing *Iqbal*, 556 U.S. at 677).

## Warden Sanchez

Plaintiff primarily seeks to sue Sanchez in his supervisory capacity as he is responsible for every inmate on the unit and should, therefore, be accountable for Plaintiff's failure to obtain proper mental health treatment. With the exception of one incident discussed below, Plaintiff's allegations, fail to suggest that Sanchez had had any personal involvement in treating Plaintiff's psychological disorders. Plaintiff further provides only conclusory allegations with regard to Sanchez's failure to have certain policies in place for providing mental health treatment to inmates like Plaintiff. Plaintiff fails to identify specific policies or otherwise allege how any unconstitutional policies implemented by Sanchez caused Plaintiff's injuries.

In one incident occurring in early December 2021, Plaintiff alleges that Sanchez responded to Plaintiff's complaints about his mental health by referring Plaintiff to Rea, a mental health clinician. (D.E. 16, pp. 16-17). Thus, to the extent that Plaintiff alleges affirmative participation by Sanchez, such allegations fail to indicate that Sanchez acted with the requisite wanton disregard to Plaintiff's mental health needs. *See McCormick*, 105 F.3d at 1061.

Accordingly, after accepting Plaintiff's allegations as true, the undersigned recommends that Plaintiff's deliberate indifference claims against Sanchez in his individual and official capacity be dismissed as frivolous and/or for failure to state a claim.

## Dr. Kwarteng

Plaintiff claims that Dr. Kwarteng has acted with deliberate indifference to his serious medical needs by failing to provide him with any treatment for his serious mental health needs and for making no referrals for Plaintiff to see a mental health provider or participate in counseling. (D.E. 16, pp. 8-9). Plaintiff further asserts that Dr. Kwarteng, as the unit's medical director, has adopted policies which: (1) prevent him from being transferred Plaintiff to another facility that can more appropriately address Plaintiff's mental health needs; and (2) fail to allow Plaintiff to get psychological counseling even though that service is available within the TDCJ system. (*Id.* at 9, 12-13).

While seeking to assign blame to Dr. Kwarteng, Plaintiff acknowledged that his sick call requests regarding his mental health issues went to the mental health department and not to the clinical department. (*Id.* at 26-27). Plaintiff's allegations further indicate that: (1) he has been prescribed "different types of medication" for his psychological disorders which have caused him adverse side effects; (2) he has signed "a refusal of treatment from declining all oral medication because of adverse side effects"; (3) Plaintiff met with Rea on December 28, 2021 and in early February 2022 to discuss his mental health complaints; (4) Plaintiff met with a medical provider identified as Cline on several occasions beginning on January 12, 2022 to discuss his mental health treatments; and (5) Rea and Cline each

insisted that Plaintiff take medications for his mental health disorders. (*Id.* at 7, 16-26). Rather than take any medications, Plaintiff prefers treatment for his mental health disorders in the form of psychological counseling and group therapy. (*Id.* at 7-8).

Plaintiff's allegations fail to suggest that Dr. Kwarteng acted with wanton disregard to Plaintiff's serious mental health needs. *See McCormick*, 105 F.3d at 1061. Plaintiff's allegations indicate instead that his sick call requests were directed to the mental health department as opposed to the clinical department led by Dr. Kwarteng. Plaintiff has been seen and evaluated by two mental health providers, Rea and Cline, on several occasions starting on December 28, 2021. Plaintiff alleges nothing to suggest that Dr. Kwarteng interfered with or otherwise discouraged Plaintiff from seeking treatment from the unit's mental health department.

Furthermore, while claiming that Dr. Kwarteng is responsible for policies that have prevented him from obtaining counseling and group therapy for his disorders, the undersigned finds these allegations amount only to his disagreement over the course of treatment in the form of medications that were recommended to treat his mental health disorders. *See* Whiting v. Kelly, 255 F. App'x 896, 899 (5th Cir. 2007) ("Although [plaintiffs] clearly believe that they should undergo additional testing and drug therapies, such disagreement does not give rise to a constitutional claim.") (citations omitted). Plaintiff's disagreement with his course of treatment recommended by his providers as well as unhappiness with the unit's policies on treating mental health issues are insufficient to establish a § 1983 claim for deliberate indifference against Dr. Kwarteng. *See* Gibbs v.

Grimmette, 254 F.3d 545, 549 (5th Cir. 2001); Johnson v. Treen, 759 F.2d 1236, 1238 (5th Cir. 1985).

Accordingly, the undersigned respectfully recommends that Plaintiff's deliberate indifference claims regarding the medical treatment provided by Dr. Kwarteng in his individual and official capacity be dismissed with prejudice as frivolous and/or for failure to state a claim for relief.

### Mental Health Clinician Rea

Plaintiff claims that Rea acted with deliberate indifference to his serious medical needs by ignoring his mental health complaints and failing to treat him. (D.E. 16, p. 28). Plaintiff testified at the *Spears* hearing that: (1) he signed a refusal form to take oral medications for his mental health disorders; (2) Plaintiff subsequently met with Rea on two occasions, once on December 28, 2021 and the other time in early February 2022; (3) after listening to Plaintiff's complaint, Rea insisted on both occasions that Plaintiff take medications for his disorders; and (4) rather than take the recommended medications, Plaintiff instead seeks counseling and group therapy. (*Id.* at 7, 20-21, 28).

Rather than suggest Rea acted with wanton disregard to Plaintiff's medical needs, the undersigned finds Plaintiff's allegations amount only to his disagreement over the course of treatment recommended by Rea to treat his mental health disorders. *See* Whiting, 255 F. App'x at 899. At most, the failure by Rea to provide Plaintiff with his requested counseling and group therapies for his mental health disorders amounts to negligence

and/or malpractice, which is insufficient to provide a basis for a deliberate indifference claim. *Gibbs*, 254 F.3d at 549; *Stewart*, 174 F.3d at 534 ("[A]lthough inadequate medical treatment may, at a certain point, rise to the level of a constitutional violation, malpractice or negligent care does not.").

Accordingly, the undersigned respectfully recommends that Plaintiff's deliberate indifference claims against Rea in her individual and official capacity be dismissed with prejudice as frivolous and/or for failure to state a claim for relief.

## B. ADA/RA Claims

The ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Similarly, under the RA, "[n]o qualified individual with a disability . . . shall, solely by reason of her or his such disability, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance. 29 U.S.C. § 794(a).

"The RA is operationally identical to the ADA in that both statutes prohibit discrimination against disabled persons; however, the ADA applies only to public entities while the RA applies to any federally funded programs or activities, whether public or private." *Borum v. Swisher County*, No. 2:14-CV-127-J, 2015 WL 327508, at *3 (N.D. Tex. Jan. 26, 2015) (citing *Kemp v. Holder*, 610 F.3d 231, 234 (5th Cir. 2010)). Courts utilize the same standards in analyzing claims under both the ADA and RA. *See Frame v.*

*City of Arlington*, 657 F.3d 215, 223-24 (5th Cir. 2011). The undersigned, therefore, will analyze Plaintiff's ADA/RA claims as though they were raised as a single claim. *See Borum*, 2015 WL 327508, at *3.

To establish a valid ADA claim, a plaintiff must show that (1) he is a qualified individual with a disability within the meaning of the ADA; (2) he was excluded from participation or denied meaningful access to services, programs, and activities, or that he was otherwise discriminated against by defendants; and (3) such exclusion, denial of benefits, or discrimination is by reason of his disability. *Lightbourn v. County of El Paso, Texas*, 118 F.3d 421, 428 (5th Cir. 1997).

Under the ADA, discrimination effectively means failure to provide a reasonable accommodation to the needs of the disabled person. *Melton v. Dallas Area Rapid Transit*, 391 F.3d 669, 672 (5th Cir. 2004). The Fifth Circuit has held that a prison's failure to satisfy the reasonable accommodation requirement may constitute a denial of services or benefits as well as intentional discrimination sufficient to satisfy the second and third prongs of the Title II ADA inquiry. *Garrett v. Thaler*, 560 F. App'x 375, 382 (5th Cir. 2014). "To succeed on a failure-to-accommodate claim, a plaintiff must prove: (1) he is a qualified individual with a disability; (2) the disability and its consequential limitations were known by the covered entity; and (3) the entity failed to make reasonable accommodations." *Ball v. LeBlanc*, 792 F.3d 584, 596 n.9 (5th Cir. 2015).

In the prison context, failure to make reasonable accommodations to the needs of a disabled prisoner may have the effect of discriminating against that prisoner because the

lack of accommodation may cause the disabled prisoner to suffer more pain and punishment than non-disabled prisoners. *See United States v. Georgia,* 546 U.S. 151, 160 (2006) (recognizing prisoner's allegations that defendant refused to provide a reasonable accommodation to a paraplegic inmate, "in such fundamentals as mobility, hygiene, medical care," resulted in the disabled inmate suffering serious punishment "without penal justification" and supported claims under the ADA and RA).

On the other hand, the ADA is not violated by "a prison's simply failing to attend to the medical needs of disabled prisoners." *Nottingham v. Richardson*, 499 F. App'x 368, 377 (citing *Bryant v. Madigan*, 84 F.3d 246, 249 (7th Cir. 1996)); *see also Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581, 603 n.14 (1999) ("We do not in this opinion hold that the ADA imposed on the States a 'standard of care' for whatever medical services they render, or that the ADA requires States to 'provide a certain level of benefits to individuals with disabilities.'"). Thus, the ADA does not cover "the mere absence or inadequacy of medical treatment for a prisoner." *See Whetstone v. Hall*, No. 4:17cv158-JMV, 2018 WL 522778, at *2 (N.D. Miss. Jan. 23, 2018)). Instead, Plaintiff must show he was treated differently because of his qualified disability. *Nottingham*, 499 F. App'x at 376.

### *(1) Individual Capacity*

Plaintiff sues Dr. Kwarteng, Sanchez, and Rea in their individual capacities with respect to his ADA/RA claims. A plaintiff may not sue defendants in their individual capacities under the ADA. *See Nottingham*, 499 F. App'x at 376, n.6; *Roberts v. Cooper*, No. 6:22cv102, 2022 WL 2442798, at *4 (E.D. Tex. Apr. 29, 2022). Likewise, a plaintiff

cannot sue a defendant in his individual capacity under the RA.  *See Lollar v. Baker*, 196 F.3d 603, 609 (5th Cir. 1999); *Payne v. Sutterfield*, No. 2:18-CV-084, 2021 WL 3173902, at *3 (N.D. Tex. Jul. 27, 2021).  Accordingly, the undersigned respectfully recommends that Plaintiff's ADA/RA claims against Dr. Kwarteng, Sanchez, and Rea in their individual capacities be dismissed with prejudice as frivolous and/or for failure to state a claim for relief.

### (2) Official Capacity

Plaintiff brings his ADA/RA claims against TDCJ and the four individual defendants in their official capacities.  The ADA does not "itself prohibit suits against both the State and its agencies." *Patrick v. Martin*, No. 2:16-CV-216, 2018 WL 3966349, at *5 (N.D. Tex. Jun. 29, 2018) (citing 42 U.S.C. § 12131(1)(a)-(b)).  The Fifth Circuit further has held that state officers sued in their official capacities are proper defendants in suits brought under the ADA.  *See McCarthy ex rel. Travis v. Hawkins*, 381 F.3d 407, 412-14 (5th Cir. 2004) ("Defendants have been sued in their official capacities and are therefore representing their respective state agencies ( which are proper Title II defendants) for all purposes except the Eleventh Amendment.").

Plaintiff's allegations, accepted as true, indicate that he suffers from mental health impairments that greatly impact and limit his daily life activities.  These allegations are sufficient to state he is a "qualified individual with a disability."

Plaintiff claims that his ADA and RA rights were violated when he was denied reasonable accommodations for his disabilities by not being provided appropriate treatment

in the form of counseling and group therapy. (D.E. 16, pp. 9-10, 14-15, 28). Without these accommodations, Plaintiff contends that is effectively denied access to the services and activities available to him within the TDCJ system, such as accessing the chow hall without having mental health issues. (*Id.*).

Plaintiff has failed to state an ADA or RA claim in this case. Plaintiff's allegations suggest that his mental health issues adversely impact his ability to participate in various aspects of prison life. Plaintiff appears to claim that the failure to provide him with psychological counseling and group therapy means he will not receive necessary mental health treatment to allow him to participate in TDCJ programs and services without having to suffer from his various mental health issues.

Regardless how Plaintiff frames his ADA/RA claim, he essentially alleges that he is being denied adequate mental health treatment. Plaintiff provides no specific facts to indicate how any decision to refuse Plaintiff's requested accommodations in the form of counseling and group therapy was motivated by his mental health disabilities. Indeed, rather than state he has been excluded from mental health counseling or therapy by reason of his disabilities, Plaintiff simply complains about the denial of his requested mental health care for his mental health disabilities. *See Payne*, 2021 WL 3173902, at *2. "[N]either the ADA nor RA covers the mere absence or inadequacy of medical treatment for a prisoner." *Id.* (citing *Bryant*, 84 F.3d at 249 and *Nottingham*, 499 F. App'x at 377).

Accordingly, the undersigned respectfully recommends that Plaintiff's ADA/RA claims against TDCJ and the individual defendants in their official capacities be dismissed with prejudice as frivolous and/or for failure to state a claim for relief.

## V.  RECOMMENDATION

For the reasons stated above, the undersigned respectfully recommends that: (1) Plaintiff's § 1983 claims for money damages against Dr. Kwarteng, Sanchez, and Rea in their official capacities be **DISMISSED** as barred by the Eleventh Amendment; and (2) Plaintiff's Eighth Amendment and ADA/RA claims against Defendants in their respective individual and official capacities be **DISMISSED with prejudice** as frivolous and/or for failure to state a claim for relief pursuant to §§ 1915(e)(2)(B) and 1915A(b)(1).  It is respectfully recommended further that this dismissal count as a "strike" for purposes of 28 U.S.C. § 1915(g), and that the Clerk of Court be **INSTRUCTED** to send notice of this dismissal to the Manager of the Three Strikes List for the Southern District of Texas at Three_Strikes@txs.uscourts.gov.

Respectfully submitted on August 18, 2022.

Julie K. Hampton
United States Magistrate Judge

## <u>NOTICE TO PARTIES</u>

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel. Within FOURTEEN (14) DAYS after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within FOURTEEN (14) DAYS after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. *Douglass v. United* Servs. *Auto Ass'n*, 79 F.3d 1415 (5th Cir. 1996)(*en banc*).